HOFFMAN, APPELLEE, *v.* AETNA LIFE INS. CO.,
APPELLANT.

(Decided February 7, 1938.)

*Mr. Arthur S. Mottinger* and *Mr. Harvey Musser,* for appellee.

*Messrs. Waters, Andress, Wise, Roetzel & Maxon,* for appellant.

WASHBURN, J.   Freda L. Hoffman, the beneficiary under two policies of insurance issued by Aetna Life Insurance Company on the life of her husband, Leroy W. Hoffman, brought this suit against said insurance company to recover the amount of insurance specified in the policies.

One of such policies was for "death from any cause" and the other one was for "death from nonoccupational accidental means."

Each of said policies was issued for the term of one year, and provided that it "may be renewed from year to year in consideration of the payment" in advance of the monthly premium specified in the policy.

Each policy is what is known as a group policy upon the employees of the employer, and under each policy the employees were to contribute a substantial part of the premiums.

The amount of the premiums depended upon the number and ages of the employees insured, and the employer was required to make monthly reports to the insurance company containing information which would enable the company to determine the amount of the premiums—which, as has been said, were payable monthly in advance.

Each policy contained the provision that "the insurance of any employee shall automatically cease when the employee fails to make the required premium contribution," and the employer was required to furnish the company written notice of all employees who failed to make the required premium contribution. And, referring to the entire monthly premium, each policy also contained the provision that "if any such premium is not paid when due, this policy shall cease," except that there was a grace period of 31 days, during which the policy should remain in force.

The insurance company issued, to each employee who applied and was accepted for coverage under the policies, a certificate of insurance, stating that the insurance was "subject to the terms and conditions of said policies and the applications therefor"; but as to termination, the certificate made specific reference only to the provision that the insurance should automatically cease when the employee failed to make the required premium contribution, "or upon termination of employment or upon discontinuance of the group policies by the employer."

Each policy contained a provision that the premiums could be paid to the authorized agent of the insurance company, and there was such an agent in the city where the employer maintained its principal office; and such payments as were made of such premiums were made to such agent. Said agent was required to report to the insurance company *daily* as to collections made by him, and the records of the insurance company show

the dates on which he reported *receiving* each of the premiums paid under said policies.

The policies were dated and became effective August 1, 1931; and under the evidence in the case, the following findings of the jury would not be manifestly against the weight of the evidence: That the records of the company disclose that none of the premiums were paid on the day they were due under the terms of the policy, and that some of said payments were not made until sixty days after they were due; that all of the premiums were eventually paid, down to and including the premium payable on June 1, 1932, for that month, which was reported paid on June 13, 1932, by the general agent; that during that month, by negotiation between the employer and the insurance company, the amount of insurance was increased as to all classes of employees; that that was made effective as of June 10, 1932, and that a payment was made on July 15, in adjustment of increased premiums due to such increased insurance, but that the amount paid was not quite sufficient to cover the June premiums as increased by such adjustment; that no premiums were thereafter paid; that no action was taken by the company indicating that the policies had ceased or lapsed until a long time thereafter, as will be referred to later; that the company set up on its records the premiums due for July, August and September, presumably upon the detailed monthly information which the employer furnished the insurance company in accordance with the terms of the policy in reference to the number of employees and their ages; that Leroy Hoffman was killed in an accident on August 23, 1932, and that proof of his death was promptly furnished to the insurance company; that sometime between September 1 and September 15, 1932, the company made a notation on its records that the policies had lapsed for nonpayment of premium due July 1, 1932, and gave notice of such claimed lapsing of the policies to Mrs. Hoffman, the

beneficiary, on December 12, 1932, and that that was the first notice the beneficiary had of such a claim; that the record is entirely silent as to whether any such notice was given before that date, or at any time, to the employer; and that it was the practice of the employer to deduct from moneys due the employees the contributions they were to make to such insurance.

There was an issue in the case as to whether Hoffman had made his contribution to such insurance, and that question was submitted to the jury in the form of an interrogatory as to whether Hoffman ceased to make the required premium contributions; and the jury answered the question "No."

There was also an issue in the case as to whether the employment of Hoffman had terminated prior to his death; and the jury answered that question, "No."

Liability under the policy as to accidental death was limited to a nonoccupational accidental death, and there was an issue in the case as to whether Hoffman was working for the employer at the time of his death; and in answer to an interrogatory the jury answered that Hoffman was not in the pursuance of the duties of his employer at the time of his accidental death. There was also an issue in the case as to whether Hoffman had ceased to be an employee of the employer, so that the insurance as to him was not in force; and, in answer to an interrogatory as to whether Hoffman was temporarily laid off or was granted leave of absence from his employment prior to the time of his death, the jury answered that he was "granted leave of absence" on or about "August 10th."

Counsel for the insurance company also requested the jury to answer the question as to whether the insurance company voluntarily relinquished known rights, benefits, privileges or advantages, and if so, what rights, etc.; and the jury answered: "The insurer waived its right to insist that the rights of the insured

have been forfeited by voluntarily accepting premium payments as much as sixty days past due date.''

It is thus apparent that the jury determined that the insurance company waived its right to insist that because of nonpayment of premiums the policies were not in force as to Hoffman at the time of his decease, and we are unable to find from the record that the findings of the jury are manifestly against the weight of the evidence; and we are of the opinion that the law is that an insurance company can waive a provision of its policy in reference to the termination thereof, and that the conduct of the insurer and the circumstances need not be such as to constitute a technical estoppel; in other words, a finding of a waiver as to payment of premiums may be justified even though the circumstances do not present the strong equities which would be required to create an estoppel. *Motz* v. *Root,* 53 Ohio App., 375, 4 N. E. (2d), 990, and authorities therein cited.

Where the insurance is under a group policy (the insureds being individual employees and the losses under the policy being payable to beneficiaries designated by them), and the policy provides that the insured employees shall contribute a substantial part of the monthly premiums; where the most natural inference to be drawn from the provisions of the policy and the existing situation is that the insurer expected that the employer would collect from the insured employees their contribution to the premiums, and the course of dealing was that the employer deducted from moneys due employees the sums they agreed to contribute, and the reasonable inference is that the insurer knew that fact; where the employer, from the beginning of the operation of the policy, failed to pay to the insurer any of the monthly premiums at the time specified in the policy, and some of the monthly payments were accepted by the insurer at a time after the insurer had a right under the terms of the policy to

treat the policy as not in force, but did not do so; where thereafter a like default in premium payments occurred, and the insurer continued to treat the policy as in force; and where thereafter, by reason of a similar nonpayment by the employer, the insurer again has the right under the policy to treat it as not in force, and there is nothing to indicate that the insured in question knew whether the employer had discontinued the scheme contemplated by the policy of collecting from the employees their contribution to the payment of said premiums, it is the insurer's duty, under such circumstances and course of dealing, if the insurer desires to treat the policy as not in force, to take some action indicating such intention; and where it again fails to do so, but, on the contrary, enters upon its books the premiums due in subsequent monthly periods and apparently again treats the policy as in force; where thereafter a loss occurs by the death of one of the employees who is not in default for his contribution to his employer of his part of premiums; and where proof of such loss is promptly filed, and the insurer *thereafter* enters upon its books its intention to treat the policy as not being in force at the time of and previous to said death, but there is no evidence that such retroactive entry of intention is communicated to the employer or the beneficiary under the policy until some time thereafter, a court should not find that the provision of the policy that it shall cease for failure to pay premiums is self-executing, and that, as a matter of law, the policy at the time of said loss was not in force, but should submit the question to the jury for its determination as to whether the insurer waived its right to treat the policy as not in force at the time of said loss.

It is urged, however, that the policy, by its terms, expired one year from its date, which would be July 31, 1932, and as the third time during the first year of the policy that the insurer had a right to treat the policy as not in effect was at the end of the first year,

the conduct of the insurer and the circumstances hereinbefore referred to cannot, as a matter of law, constitute a waiver of the payment of premiums necessary to continue the policy in force.

While the policy, under the title of "premium payments," contains the language that it "is issued for the term of one year," it also contains provisions showing that the amounts of the monthly premiums were based upon the varying ages of the employees insured, and that it was therefore more convenient, if not absolutely necessary, to establish a yearly period for the fixing of an average premium rate; and the policy also contained the provision that "no increase shall be made during the first five years' which will result in premium rates higher" than those shown by the table set forth in the policy.

There is no evidence in the record indicating that there were any negotiations in reference to any changes in the policy effective at the beginning of the second year, nor any evidence tending to prove that any such changes were contemplated by the parties.

As we construe the policy as a whole, it was not the intention of the parties that the continuance of the policy in force after the failure to pay premiums as specified during the year was any different than the failure to pay premiums at the beginning of a new year, and we are therefore of the opinion that the insurer could waive the failure to pay premiums at the beginning of the second year as well as during the first year.

We have not referred to all of the propositions of law urged by counsel for the insurance company, nor all of their claims made in reference to this controversy; but we have said sufficient, we think, to indicate the conclusion which we have reached, and that

is that the record does not disclose any prejudicial error, and that the judgment should be affirmed.

*Judgment affirmed.*

STEVENS, P. J., and DOYLE, J., concur.

(Decided March 4, 1938.)

ON APPLICATION for rehearing or for certification.

WASHBURN, J. The insurance company has filed an application for a rehearing of this case, or, in the alternative, that the court certify the case to the Supreme Court because of alleged conflict with decisions by several other Courts of Appeals.

In the brief on the application for a rehearing, counsel for the insurance company complain that in several instances reference to the evidence in the opinion of the court is at least inaccurate.

We have reexamined the record and find that it fully justifies the statement that, as a general agent of the insurer was required to report to the insurer *daily* the collections made by him, and as the entry of such collections were made on the records of the company (exhibits C and D) promptly on the receipt of said reports, said records *do* show the dates on which such agent received each of the premiums paid.

In answer to an interrogatory by the insurer which was submitted to the jury, the jury found that "the insurer waived its right to insist that the rights of the insured have been forfeited by voluntarily accepting premium payments as much as sixty days past due date"; and in answer to a question as to "who personally" relinquished such rights, the jury answered, "Defendant." Counsel requests that the court answer that question of "who personally."

Responding to that request, we observe: The pol-

icy, after naming certain officials of the insurer, including "secretary or assistant secretary, group division," who have authority to bind the company, provides that "no *other* person can alter or waive any of the conditions of this policy or make any agreement which shall be binding upon the company." The insurer voluntarily brought into court its record that had been made and kept in its home office, and the evidence is that the entries in the record so voluntarily brought into court were made "by clerks at the home office" of the insurer, "working under" the "direction and supervision" of the *secretary of the group division* of the insurer.

It thus appears that officials having authority to so conduct the business of the company as to waive the payment of premiums as stipulated in the policy, made the entries upon the records of the company which the jury found constituted such waiver. Such records show that none of the premiums were paid at the times specified in the policy and that some of them were paid and accepted as long as 58 and 60 days after they should have been paid, and the insurer company did nothing to indicate that it did not acquiesce in such course of conduct, or that it considered that the policies had lapsed, until long after the death of Hoffman.

Further, the entries in the record so made by such officers of the company show not only a custom of receiving overdue premiums without objection, or at least a custom of not exacting prompt payment of premiums, but, in connection with the other evidence in the record, they show a practice of not treating the policy as lapsed when the insurer had a right to so treat the policy; and the entries also show that after the failure to pay the July premiums within the grace period, the insurer, upon information which the insured was required by the terms of the policy to furnish the insurer, calculated and set up on its records

the premiums due for August and September. All of this was done during a time when the insurer had a right to treat the policy as not in force, and some of said entries were made after the insurer had received proof of the death of Hoffman; and no entry was made indicating an intention to treat the policy as not in force until *after* the occurrence of the foregoing acts and conduct of the officers of the insurer.

We shall not refer in detail to other claimed inaccuracies in the opinion.

We have reexamined the record and are still of the opinion that, considering all of the evidence and the reasonable inferences from such evidence which the jurors, as triers of the facts, were entitled to draw, the finding of the jury is not manifestly against the weight of the evidence as to any controlling fact.

We have always understood that, in an ordinary contract, where the parties, by negotiation, fix the terms of the contract and both of them have a part in choosing the language in which such terms are expressed, a provision as to times of payments may be waived by a course of conduct; and that where failure to make installment payments as stipulated gives to one of the parties the right to claim an advantage and he repeatedly accepts past due payments, he waives the right to claim such advantage and cannot claim it as to subsequent payments unless he gives the other party notice of his intention to insist upon payments as specified.

We know of no good reason for saying that such principle does not apply to insurance contracts, where the insured has no part in determining the wording of the contract.

We have examined the Court of Appeals cases which it is claimed are in conflict with the judgment we have reached in this case, and we do not find that our judgment in this case is in conflict with any of the cited cases, and we therefore decline to certify the case.

The application is denied.

*Application denied.*

STEVENS, P. J., and DOYLE, J., concur.