James G. McHENRY and Donald G. McHenry, Appellants,

v.

FORD MOTOR CO., Appellee.

No. 13530.

United States Court of Appeals
Sixth Circuit.

July 10, 1959.

Arthur J. Abbott, Detroit, Mich., for appellants.

Lloyd T. Williams, Jr., Dearborn, Mich., Richard B. Darragh, Lloyd T. Williams, Jr., Dearborn, Mich., on brief, for appellee.

Before ALLEN and McALLISTER, Circuit Judges, and MATHES, District Judge.

ALLEN, Circuit Judge.

This case arises out of an action in equity, filed in the Michigan State Court, April 29, 1953, to enjoin undercutting, washing away, flooding and erosion of plaintiffs'[1] land by waters of defendant's reservoir; to compel defendant to restore plaintiffs' land, improvements and equipment and to recover money damages for injuries sustained. The action was removed to the federal court of the Eastern District of Michigan, which, on February 11, 1957, granted a motion for summary judgment filed by defendant under Federal Rules of Civil Procedure rule 56(b) and (c), 28 U.S.C. The court denied plaintiffs' motion for new trial and leave to amend bill of complaint filed February 21, 1957, and a further motion filed November 20, 1957, for leave to file amended and supplemental bill of complaint, and this appeal was instituted. On the original hearing the judgment was affirmed upon the basis of the District Court's opinion, 146 F.Supp. 896, Affirmed 6 Cir., 261 F.2d 833. A motion for rehearing was filed and sustained and the rehearing was duly held. The conclusions expressed herein are those formed by the court upon rehearing.

The case arises out of the following facts shown by the record and found by the District Court. In 1925 James G. McHenry, attorney, and his wife, now deceased, owned some 190 acres of land bordering on the Huron River in Washtenaw County, Michigan. On October 5, 1925, they deeded 155 acres of this land to defendant, who purchased it for the purpose of flooding it with waters of an artificial lake to be created by a proposed dam, to be built downstream on the Huron River. Defendant completed the dam in 1932.

About 10 acres of the property was used as a country place on which Jas. G. McHenry had constructed a large stone house with numerous outbuildings, water power for a grist mill, and a water wheel for domestic lighting, on a canal along the river. Some 4 acres around the house were extensively landscaped. All of these buildings and improvements were situated on the 35 acres of the original tract not deeded by grantors to defendant. Some part of the remaining land was later deeded to the son of the grantors, coplaintiff Donald G. McHenry.

---

1. The parties will be denominated as in the court below.

The land conveyed to defendant was described by metes and bounds and bounded by the center line of the Huron River. The deed contained the following provisions [146 F.Supp. 898]:

"It is contemplated by the parties hereto that a pond or lake, in connection with a dam and power plant located lower down the stream, will be formed upon said lands by waters of the Huron River impounded thereon. In addition thereto, first party also grants and conveys to second party all flowage rights, running with said property due to the flowage thereof by said pond. No building or structure shall be erected on the lands hereby conveyed, nor shall any part of said lands, or any waters thereon, be occupied or used in any manner that would render the remaining lands of the parties of the first part adjacent to or abutting upon the lands hereby conveyed unsuitable or undesirable for high-class residence purposes; nor shall said lands be used otherwise than for the purpose of flowage by the waters of such pond or lake to be formed as aforesaid. This restriction shall remain in force for a period of thirty (30) years from the date hereof.

\*    \*    \*    \*    \*    \*

"The parties of the first part reserve for themselves and for the personal use of the persons who shall be owners of, and shall reside upon, any part of their remaining lands abutting on the land hereby conveyed, the right at all times of ingress and egress to and from any waters upon any part of said lands, from and to any part of their remaining lands abutting upon or adjacent to the lands hereby conveyed, together with the right to go upon and use said pond or lake and the waters thereof for the purpose of boating, bathing, fishing, hunting, the same as any riparian owner on the banks of a natural lake or navigable stream."

The grantors' attorney, assisted by plaintiff James G. McHenry, himself an attorney, drew the deed.

In 1933 the waters impounded in the lake reached a 686-foot contour level. The remaining 35 acres were bounded by the lake for a distance of approximately a mile and the soil thereon was soft, gravelly, porous, and easily eroded. The District Court found in substance that since the waters were impounded they have been washing away and undercutting plaintiffs' retained lands. As of the date of filing this suit in 1953 some 12 acres of plaintiffs' land, together with fences, pump houses, trees and shrubbery had been washed away, and on this date foundations of the main building were in danger of collapse. The District Court declared, "except for 5 or 6 acres, the remaining land is of no value for farming or residence purposes and, according to the complaint, is unsalable  \*  \*  \*."

Plaintiff, James G. McHenry, complained to defendant several times in 1933. In 1947, as a result of letters from McHenry and his attorney, defendant's agents inspected the property and said that it "ought to be 'fixed up', which would cost an enormous sum of money \*  \*  \*." Plaintiffs allege that they were led to believe that defendant would do something about the situation but no action has been taken.

Defendant's principal contentions in its motion for summary judgment were:

1.  That as plaintiffs expressly granted defendant flowage rights, defendant is not liable for injury done by "the natural action of the impounded water."

2.  That in the absence of negligence a reservoir owner is not liable to riparian owners for damages caused by the natural action of waters impounded in the manner consented to by the riparian owners.

3.  That defendant acquired by prescription the right to have its waters abut against plaintiffs' land, together with all the natural consequences.

4.  That plaintiffs' claims are barred by laches and the statute of limitations.

Plaintiffs relied upon the covenant in the deed reading "nor shall any part of said lands, or any waters thereon, be occupied or used in any manner that would render the remaining lands of the parties of the first part adjacent to or abutting upon the lands hereby conveyed unsuitable or undesirable for high-class residence purposes; nor shall said lands be used otherwise than for the purpose of flowage * * *." They contended that this provision imposes liability on the grantee for undercutting, washing away and erosion of plaintiffs' retained land. Plaintiffs also relied upon Michigan Statutes Annotated 26.524 which provides with certain exceptions not material here that no covenant shall be implied in any conveyance of real estate.

The District Court found that the above quoted covenant was ambiguous and that the intention of the parties must be ascertained as to its meaning. The court noted that the lands conveyed were clearly stated to be used for the purpose of creating an artificial pond in connection with a dam and power plant to be erected downstream of the Huron River and for no other purpose but for that of flowage. The District Court found that the damage was caused by the natural action of the impounded waters and considered that to hold defendant liable would nullify and destroy the grant of flowage rights; that defendant could not have full enjoyment of the rights conferred upon it in the deed if it had to lower the waters from the 686-foot level or to build a retaining wall for plaintiffs' extensive shore line. It concluded that, in the absence of negligence, defendant could not be held liable for action of its impounded waters beyond the limits of the land conveyed to it. The court conceded that the precise situation involved was not contemplated by the parties, but pointed out that the grantor, James G. McHenry, was an attorney, that he and his attorney drew the deed. Moreover, it found that grantor's attorney requested that a paragraph be inserted in the deed to the effect that " 'surface flowage shall not extend be-

yond the boundaries of the lands hereby conveyed * * *.' " This provision was not included in the deed as executed. The deed having been drawn by the grantor was construed against him and the court found in effect that there was no negligence. It considered that the parties could not have contemplated that defendant should be required to build a retaining wall to protect plaintiffs' shore line. Plaintiffs answer, and the District Court so found, that it could not have been contemplated by the parties that the retained acreage would be subject to invasion by the waters of plaintiffs' lake to the point of ultimate destruction of all of plaintiffs' remaining land.

The District Court held that the pleadings, depositions and record showed that there was no genuine issue as to any material fact, that the damage was caused by the natural action of the impounded waters, that no liability rested upon defendant, and that defendant was entitled to a summary judgment as a matter of law. Rule 56(b) and (c).

It is the established rule of the federal courts in construing rule 56 that a summary judgment should be entered only in cases where there is no genuine issue as to any material fact. Begnaud v. White, 6 Cir., 170 F.2d 323; Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167; Estepp v. Norfolk & Western Railway Co., 6 Cir., 192 F.2d 889. On considering such a motion the pleadings are to be liberally construed in favor of the party opposing the motion. Purity Cheese Co. v. Frank Ryser Co., 7 Cir., 153 F.2d 88; Wittlin v. Giacalone, 81 U.S.App.D.C. 20, 154 F.2d 20. Moreover, the court is required to take the view most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences that may be drawn from the evidence. Ramsouer v. Midland Valley Railroad Co., 8 Cir., 135 F.2d 101.

Applying these rules we think that the summary judgment must be reversed. Defendant's answer denied various allegations in plaintiffs' complaint and numerous paragraphs in the answer averred

that defendant was without knowledge or information sufficient to form a belief as to the facts alleged. Repeatedly defendant averred that whatever damage plaintiffs had suffered was caused by plaintiffs' failure to protect their land from the normal erosive action of wind, rain, water and frost.

■ Under these pleadings the material facts of the case were disputed. Answers that set forth that defendant has not sufficient knowledge or information to form a belief in legal effect constitute denials. Maclay v. Sands, 94 U. S. 586, 24 L.Ed. 211; Grant v. A. B. Leach & Co., Inc., 280 U.S. 351, 357, 50 S.Ct. 107, 74 L.Ed. 470, Federal Rules of Civil Procedure rule 8(b) 28 U.S.C. In view of the court's holding that there was no genuine issue of material fact bearing on the issues raised by plaintiffs' action and that defendant was entitled to a judgment as a matter of law, the court did not consider the defenses of prescriptive rights, laches, and the statutes of limitations. These defenses also involved possible issues of fact but we do not discuss them as we think a number of material disputed facts are presented in the record. They include the following questions:

■ 1. What was the intention of the parties in the execution of the deed? The deed in terms describes the area of the lake by metes and bounds and limits the flowage rights granted to the 155 acres conveyed. The restrictive covenant applies not only to the use of defendant's land, but also to the occupation and use of the waters thereon. The District Court held that the grant was ambiguous and that, to determine its meaning, the intention of the parties must be considered. We deem it unnecessary, in view of our conclusion that the summary judgment must be set aside, at this point to resolve the legal questions arising out of the grant. As to the intention of the parties, clearly questions of fact are presented. Defendant urges that, contrary to the terms of the deed, the parties did not intend to limit the flowage rights to the land conveyed. Plaintiffs maintain that it was their intention to limit the flowage rights according to the provisions quoted above. They claim they are entitled to show that their attorney did not press for a more precise statement in the deed as to whether flowage rights were limited to the land conveyed, although he had previously suggested such a provision because he considered that plaintiffs were completely protected by the express terms of the deed. This situation raises not only questions of law, but also disputed questions of material fact.

2. In case on trial plaintiffs' construction of the deed is sustained, a material question of fact is whether defendant violated the terms of the grant which required the 155 acres conveyed and the waters impounded thereon to be used in such manner as not to render the retained acreage undesirable for high-class residence purposes.

3. Under this record was the action of the wind, rain, water and frost, including the undercutting and washing of plaintiffs' land by the artificial lake, normal erosive action?

4. Whether the flooding and encroachment of plaintiffs' land by Ford Lake have rendered such land valueless for farming or residential purposes. While the court found on this point in the affirmative, defendant disputes this allegation.

5. Was defendant guilty of negligence in its construction and management of the artificial lake, whether by acts of commission or omission?

6. This proceeding was instituted as a chancery case. Since the action seeks an injunction and invokes equitable principles, the question whether defendant has been unjustly enriched by 12 acres of plaintiffs' land alleged to have been added to the 155 acres sold to defendant is a material question of fact. Defendant does not deny that the area of its lake is enlarged but contends that it has received no benefit therefrom. It claims that its storage capacity has not been increased and that the head and volume of

water stored have not been affected by the addition of the acres washed away. This is a disputed question of material fact.

■ We deem it unnecessary to discuss the question of the denial of plaintiffs' motion for new trial. The elimination of the judgment will dispose of this question. As to the court's denial of the motion for leave to amend the complaint, embodied in the motion for a new trial, this ruling was made mainly upon the ground that the motion was not timely filed. We cannot say that this action constituted abuse of discretion. Barron and Holtzoff: 1 Federal Practice and Procedure §§ 445, 446. The amendments were proffered more than four years after the commencement of the action. A period of three years from the beginning of suit has been held to constitute laches and to justify denial of a motion to amend. Wheeler v. West India Steamship Co., 2 Cir., 205 F.2d 354.

However, the motion to file a proposed amended and supplemental complaint stating events alleged to have occurred subsequent to the time of filing the original complaint presents a different situation.

■■ Since this court has held that it must set aside the summary judgment we consider the question whether leave should be given to file the proposed amended and supplemental complaint as if no summary judgment had been entered. Rule 15(d) specifically provides for allowance of such supplemental proceedings upon reasonable notice and upon such terms as are just. The tendered supplemental complaint sets up occurrences and events arising out of the action of the lake which occurrences and events have happened since the original complaint was filed. It brings up to date the allegations of injury threatened to the house, stating that "the reinforced concrete floor of the easterly porch of said house is breaking up and large cracks have appeared therein and the floor is settling and cracking due to the removal of the subsoil, and the septic tank near the house is about to fall into

Ford Lake and the trees and shrubbery are dying and falling down." It sets up that the peninsula of land extending for a distance of about 2000 feet into Ford Lake has been washed away so as to become "almost an island." It alleges that the remaining land owned by plaintiffs has been decreased in area from 35 to 23 acres "and the flooding and progressive lessening of the area of said remaining land, if permitted to continue, will eventually result in the total confiscation of plaintiffs' property, and increase the area of the original grant from 155 to 190 acres." We are compelled to consider these averments at their face value. The facts alleged must be taken as true. Cf. Art Metal Construction Co. v. Lehigh Structural Steel Co., 3 Cir., 116 F.2d 57; Galbreath v. Metropolitan Trust Co. of California, 10 Cir., 134 F.2d 569.

■ As the judgment is to be set aside, certain principal reasons relied on by the District Court for denying the motion for leave to file amended and supplemental complaint no longer apply. The plaintiff may not enlarge his cause of action after judgment has been entered. 1 Barron and Holtzoff 898, § 447, note 93; United States v. City of Brookhaven, 5 Cir., 134 F.2d 442, 446. The trial court applied this rule and held herein that the supplemental complaint injected entirely new theories of recovery into the case and therefore could not properly be filed.

■ It can hardly be denied that the claims of the amended and supplemental pleading arose out of the transactions and occurrences set forth in the original pleading, Rule 15(c). As the all-important factor of the judgment will be eliminated, the usual practice should be followed, namely, to permit amendments freely to cure defective or imperfect pleadings. 1 Barron and Holtzoff Federal Practice and Procedure 898, § 447.

■ Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865, presents a similar conclusion based on similar facts. The trial court there had granted a motion to dismiss the action because the

complaint failed to state a claim upon which relief could be granted. The Court of Appeals for the Fourth Circuit reversed the order of dismissal and granted plaintiff leave to file his amended complaint even though there had been no showing that the trial judge abused his discretion in refusing to grant leave to amend upon dismissal of the complaint for insufficiency.

Moreover, in the instant case the occurrences supporting the claimed new theories were stated, although somewhat indefinitely, in the original complaint. Except that the damage described in the proffered amendment was subsequent to and greater than in the original complaint, the factual situation set up remains substantially unchanged. If we assume that under this record the averments of unjust enrichment state a new cause of action, Barron and Holtzoff, supra, 895, Section 447, note 82, points out that it is generally agreed that a change in the legal theory of the action is not the test of propriety of an amendment to a pleading, particularly in view of the prevailing practice of making final disposition of actions on the evidence rather than the pleadings. International Ladies' Garment Workers' Union v. Donnelly Garment Company, 8 Cir., 121 F.2d 561; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619. Cf. Freeman v. Bee Machine Co., Inc., 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509; Kuhn v. Pacific Mutual Life Insurance Co. of California, D.C., 37 F.Supp. 102, 105.

The supplemental complaint alleges the consummation of the destruction of plaintiffs' property, which was foreshadowed in the original action and recognized in the findings of the District Court. Since the encroachments on plaintiffs' land may be held to constitute a continuing trespass, the recital of what has occurred since the filing of the action is not untimely. Under such circumstances amendments should be allowed almost as a matter of course. Latham v. Richards, 15 Hun, N.Y., 129. If it is not shown that defendant may be injured by the filing of such amendments, applications for leave to serve a supplemental complaint are normally granted. Doyle v. Chatham & Phenix National Bank of City of New York, 219 App.Div. 522, 220 N.Y.S. 231. No prejudice to defendant is shown here. A full hearing and decision on the merits can do injustice to neither party. The courts give rules of this kind a liberal construction, always trying where possible to see that cases are decided on their merits.

Plaintiffs have set up a prima facie case on at least two counts through their allegations of continuing trespass and unjust enrichment. It is not desirable that the court at this point should pass on the validity or nonvalidity of these causes of action. As a general rule plaintiffs should be liberally allowed to set up new facts which really are a part of the original case. Latham v. Richards, supra. In a controversy like this, involving important claims asserted to have arisen out of the action of the water and ice of Ford Lake or out of the concurrence of such forces with the erection by defendant of a large dam for impounding a lake, "the Court should have open to it a wider vista than presented within the four corners of the pleadings, before determining the important question as to whether the plaintiff shall stay in court or not." Montgomery Ward & Co., Inc., v. Schumacher, D.C., 3 F.R.D. 368, 370.

The summary judgment entered by the District Court is reversed and vacated, with directions that plaintiffs be permitted to serve and file an appropriate amended and supplemental complaint bringing to date the claimed damages which plaintiffs aver they have suffered as a proximate consequence of defendant's alleged continuing trespass. The case is remanded to the District Court for further proceedings not inconsistent with this opinion.