**148**

Robert G. BROMLEY, Philip R. Kintzele, Karl R. Lindfors, Frederick M. Phelps, Ken W. Smith, John B. Mitchell, J. Carroll Arnett, Ella M. Gregoricka, Thomas B. Reed, Thomas E. Fahlstrom, Terry L. Apps, Sandra L. Conroy, Charlene L. Merrill, Vicky L. Niewoonder, Sally J. Redinger, Gordon E. Thomas, and James W. Trowbridge, Plaintiffs,

v.

MICHIGAN EDUCATION ASSOCIATION–NEA, National Education Association, Central Michigan University, Ferris Faculty Association, Grosse Pointe Education Association, Grosse Pointe Association of Educational Office Personnel, Lansing Schools Education Association, Mendon Education Association, and Traverse City Education Association, Defendants.

No. 92–CV–10443–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Feb. 10, 1998.

Reynolds H. Campbell, Attorney at Law, Mount Pleasant, MI, Raymond J. LaJeunesse, Jr., National Right To Work Legal Defense Foundation, Inc., Springfield, VA, for Plaintiffs.

Arthur R. Przybylowicz, James J. Chiodini, Okemos, MI, for Defendants.

***OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO AMEND AND SUPPLEMENT COMPLAINT AND MOTION FOR CLASS CERTIFICATION***

CLELAND, District Judge.

Pending before the court are plaintiffs' motions to amend and supplement the complaint and for class certification. The mo-

tions were exhaustively briefed and a hearing was held on December 17, 1997. For the reasons stated herein, both motions are GRANTED.

## I. Background

The plaintiffs in this action are eighteen Michigan public college and public school employees who are not members of their local union affiliates of the Michigan Education Association ("MEA") and the National Education Association ("NEA"), although these union locals represent them for purposes of collective bargaining. They originally sued the defendant unions alleging that the unions were attempting to collect service fees for the 1991–92 school year for purposes that are constitutionally impermissible in that they are not related to collective bargaining, but rather were for political and ideological activities. In their proposed amended and supplemental complaint, plaintiffs seek to broaden their complaint to cover subsequent school years, during which defendants' conduct followed a similar pattern.

Plaintiffs seek declaratory judgment, injunctive relief, monetary damages and attorney fees. They claim violation of their First and Fourteenth Amendment rights and seek relief pursuant to 42 U.S.C. §§ 1983 and 1988. Additionally, they seek class certification on behalf of all non-union public school employees who must pay a service fee to the union and who have challenged or will challenge the amount of the fee for the 1991–92 school year or for later years.

Michigan law requires that public employees financially support, through a service fee, a labor union of which they are not members to the extent that the union provides collective bargaining on their behalf. M.C.L. § 423.210. The Supreme Court approved the Michigan service fee statute in *Abood v. Detroit Board of Education,* 431 U.S. 209, 232, 97 S.Ct. 1782, 1789, 52 L.Ed.2d 261 (1977); however, the Court later required that non-union members be provided a procedure through which to challenge those fees. *Chicago Teachers Union v. Hudson,* 475 U.S.

292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). The MEA developed procedures in order to comply with *Hudson,* which procedures have been approved by the courts. *Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991); *see Bromley v. Michigan Educ. Ass'n–NEA,* 843 F.Supp. 1147, 1150 (E.D.Mich.1994).

The MEA procedures followed in this case are identical to those approved in *Lehnert* and, thus, are not at issue:

> The union made an initial determination of the service fees to be charged to employees who did not pay union dues. The union sent a packet of information to each such employee. The packet of information contained a form which an employee could complete and return to challenge the tentatively established service fee. For the school year 1991–92, among all of its collective bargaining units, 236 employees, including the 18 plaintiffs, notified the union that they wished to challenge the 1991–92 service fee by checking the appropriate box on the objection form and by returning it to the union.

*Bromley,* 843 F.Supp. at 1150. That notification resulted in arbitration of the dispute, and the arbitrator determined that the fee was appropriate. Plaintiffs then sued.

### A. Prior District Court Ruling

On January 22, 1994, this court [1] rendered the decision that was the subject of the recent appeal in this matter. Before the court at that time was defendants' motion for summary judgment; and the court's opinion set forth the issues as follows:

1. The impact of *Hudson*-type arbitration on the scope of discovery in a subsequent action pursuant to 42 U.S.C. § 1983.

2. The impact of *Hudson*-type arbitration on the manner in which factual issues are defined and resolved in a subsequent § 1983 action.

3. The chargeableness of specified categories of expenses.

---

1. United States District Judge James P. Churchill presided over the original district court proceedings in this matter.

4. The appropriateness of accounting procedures approved by the arbitrator.

*Id.* The only discovery provided to plaintiffs at that point was the arbitration record, although plaintiffs had requested substantial additional discovery such as the identity of persons who calculated the tentative fee and records of the defendants' spending on chargeable and nonchargeable activities. These underlying records had not been provided to the arbitrator. The court stayed discovery and required plaintiffs to respond to the summary judgment motion with the information they had available to them through the arbitration record.[2] The court reasoned that "[b]ut for the arbitration proceedings and award, extensive discovery would be fully justified." *Id.* at 1151. The court noted that the arbitration proceedings in this type of case were designed to be similar to judicial fact-finding, and "[u]nless the arbitration award is to have a significant impact in subsequent judicial proceedings, the procedure spawned by the Supreme Court is largely a waste of time and money." *Id.* at 1153. Thus, the court gave great weight to the arbitrator's decision. Judge Churchill noted that, since plaintiffs did not ask the arbitrator to provide access to the underlying records, it would be inappropriate for the court to examine that information. *Id.* at 1157.[3]

As to the second issue—the impact of arbitration on the way in which the court decides the factual issues in later litigation—the court determined that it owed the arbitrator's decision a great amount of deference. The court decided that its conclusions must revolve around whether the arbitrator made the relevant computations in a reasonable manner. *Id.* at 1154. Ultimately, the court upheld the arbitrator's decision. *Id.* at 1157.

The district court next turned to analysis of the chargeableness of four specific catego-

ries of expenses, including extra-unit litigation expenses, expenses related to strengthening bargaining units, NEA expenditures for the National Foundation for the Improvement of Education, and certain administrative costs. *Id.* at 1154. The court analyzed these costs under the standards set forth in *Lehnert* and determined that each set of expenses were chargeable by the unions. *Id.* at 1154–56. Finally, the court concluded that the accounting procedures used by the defendants were reasonable. *Id.* at 1156–57. After granting summary judgment to defendants, the court denied as moot plaintiffs' motion for class certification. *Id.* at 1157.

## B. Court of Appeals' Ruling

The Sixth Circuit vacated the district court's opinion and remanded this action for further proceedings. The primary issue addressed by the court of appeals was whether the court's curtailment of discovery was an abuse of discretion, a question answered in the affirmative. The court stated that "[t]he statutory right to have an Article III court adjudicate suits brought pursuant to § 1983 for vindication of rights secured by the First Amendment of the Constitution cannot be foreclosed by non-statutory arbitration conducted by a privately appointed decisionmaker." *Bromley v. Michigan Education Ass'n–NEA,* 82 F.3d 686, 692 (6th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). Although the Supreme Court's decision in *Hudson* outlined the procedure to resolve the issues of chargeableness of union expenses, the court found that an arbitrator's decision is not entitled to *res judicata* effect. An arbitrator's decision may be entitled to deference in certain cases, but, the court stated, that deference was not due where the arbitrator had not examined the records underlying the unions' decisions. *Id.* at 693. The court concluded:

---

**2.** The plaintiffs sought a stay of decision on the summary judgment motion until completion of discovery, contending that the relevant information relating to the merits of the motion was *solely in possession of the defendants.* Plaintiffs maintained that discovery of that information was essential in order to oppose the summary judgment motion. The court disagreed and denied the requested stay of its decision.

**3.** Significantly, the court notes that while the parties could submit as much evidence as they wished, the arbitration proceeding did not provide for any pre-hearing discovery. *See Bromley,* 843 F.Supp. at 1153.

Given the importance of the constitutional interests at stake in the case at bar, the district court should not have decided the summary judgment motion without allowing meaningful discovery first. In declining to allow any discovery beyond the arbitration record and the election forms, it seems to us, the district court clearly abused its discretion.

*Id.* at 695.[4]

Additionally, the court of appeals addressed two of the classes of expenses plaintiffs argue are not chargeable under the First Amendment. The court held that extra-unit litigation should be treated as chargeable on remand in light of its recent decision in *Reese v. City of Columbus*, 71 F.3d 619 (6th Cir.1995). *Bromley*, 82 F.3d at 696. The Sixth Circuit also held that defensive organizing costs designed to perpetuate a union should be treated as non-chargeable:

> In *Ellis*, the Supreme Court held that it would be "perverse" to allow unions to force objecting nonmembers to fund the union's "costs of attempting to convince them to become members." [citation omitted] We think it would be equally perverse to require the plaintiffs to help underwrite actions designed solely to allow the union to perpetuate itself by maintaining the loyalties of existing members. See *Reese v. City of Columbus*, 798 F.Supp. 463, 470 (S.D.Ohio 1992), *rev'd on other grounds*, 71 F.3d 619, where the court explained that "[d]efensive organizing would serve only the union's self-interest in perpetuating itself as the sole representative of the bargaining unit, a goal which is not germane to collective bargaining activity and which may add, to the burden on an objector's First Amendment rights since the objector may favor some other union or no union."

*Id.* The court further indicated that a genuine issue of material fact exists regarding the chargeableness of certain administrative costs although it appeared that the defendants' accounting procedures were reasonable. *Id.*

The Sixth Circuit stated that the district court would need to revisit the class certification question at the appropriate time after remand. *Id.*

## II. Discussion

### A. Motion to Supplement/Amend Complaint

On remand, plaintiffs attempt to recast the posture of the case to reflect new allegations of improper conduct that have arisen since the filing of the original complaint, conduct allegedly related to that set forth in the complaint filed in 1992. Plaintiffs seek to supplement and amend their complaint as follows: (1) to allege events that are a continuation of the conduct pleaded in the original complaint: to wit, defendants' collection of unconstitutionally excessive service fees in the years subsequent to 1991–92; (2) to add individuals to strengthen representation of the class in the face of defendants' challenge to the adequacy of class representation; (3) to add as a defendant the Saginaw Education Association for charging unconstitutional service fees in the 1996–97 school year, pursuant to the same MEA-defined categories; and (4) to redefine the class to include non-union members who objected to the amount of service fees contained in defendants' notice and reserved the right to challenge the fees in court instead of resorting to the MEA arbitration procedures. The court will address each argument in turn.

#### 1. Supplementation for continuing conduct

■ "Upon motion of a party the court may ... permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed.R.Civ.P. 15(d). The supplementation "procedure is equally applicable after remand for further proceedings." *Texarkana v. Arkansas Gas Co.*, 306 U.S. 188, 203, 59 S.Ct. 448, 456, 83 L.Ed. 598 (1939). Moreover, like amendment of pleadings under Rule 15(a), supplementation of original pleadings is to be liberally permitted

---

**4.** In reversing the limitation on discovery, the Sixth Circuit addressed Judge Churchill's comment regarding the futility of *Hudson* arbitration, stating that time spent in arbitration is never wasted if it offers a potential for avoiding litigation. *Bromley*, 82 F.3d at 694.

"when justice so requires." Fed.R.Civ.P. 15(a); *Weisbord v. Michigan State University,* 495 F.Supp. 1347, 1350 (W.D.Mich.1980); *see McHenry v. Ford Motor Co.,* 269 F.2d 18, 25 (6th Cir.1959) (general rule liberally allows plaintiffs to allege new facts "which really are a part of the original, case."). Such a determination is within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Caldwell v. Moore,* 968 F.2d 595, 598–99 (6th Cir.1992).

▬ In considering whether to allow a plaintiff to amend or supplement its complaint, the district court should consider the following factors: (1) undue delay in filing the motion; (2) lack of notice to adverse parties; (3) whether the movant is acting in bad faith, or with a dilatory motive; (4) failure to cure deficiencies by previous amendments; (5) the possibility of undue prejudice to adverse parties; and (6) whether the amendment is futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Robinson v. Michigan Consol. Gas Co.,* 918 F.2d 579, 591 (6th. Cir. 1990). In setting forth the salient factors, the *Robinson* court specified that delay in and of itself is not sufficient reason to deny a motion to supplement the complaint, and emphasized that notice and the existence of substantial prejudice to the party opposing amendments are factors critical to the determination. 918 F.2d at 591. Moreover, where "the original pleading placed the defendant on notice that the disputed conduct was of a continuing nature," *Chesapeake & Ohio Ry. v. U.S. Steel Corp.,* 878 F.2d 686, 690 (3d Cir.1989), the supplemental complaint should be allowed. *See McHenry,* 269 F.2d at 25. In those circumstances, "the defendant is generally expected to defend against all claims arising out of that course of conduct—whether accruing before or after the original pleading was filed." *Chesapeake & Ohio Ry.,* 878 F.2d at 690–91.

▬ Plaintiffs seek to supplement and amend their complaint in two general respects. First, plaintiffs seek to add specific allegations that defendants charged unconstitutional fees in the school years from 1992–93 through 1997–98.[5] Second, plaintiffs seek to redefine the proposed class to include not only non-union members who challenged fees through MEA arbitration procedures but also those who notified the union that they objected to the fees charged and reserved their rights to challenge the constitutionality of the charges in other fora.[6] Defendants oppose the addition of the factual claims and the attempted amendment of the class definition, primarily on the grounds that the original complaint did not provide notice of the expansive allegations and claims of the proposed supplemental complaint.

Defendants argue that the original complaint did not assert a claim of a continuing violation. Defendants characterize plaintiffs' original claim as one challenging only the constitutionality of the service fees charged and collected for the 1991–92 school year. There is no continuing violation in the *policy* of collecting such fees because the procedure has been litigated and found to be constitutional. *See Lehnert,* 500 U.S. 507, 111 S.Ct. 1950. Defendants argue that it is only in the application of the policy, in charging allegedly nonchargeable fees in each separate school year, that defendants' conduct might be violative of plaintiffs' First Amendment rights. Thus, the claims plaintiffs seek to add, according to defendants, are separate and distinct claims and do not relate to a continuing course of conduct. That said, defendants do not oppose the addition of claims by individual plaintiffs for the years 1994–95 through 1997–98, which are within the statute of limitations period and could be asserted by plaintiffs in a separate lawsuit. Defendants do

---

**5.** At oral argument, plaintiffs indicated that they seek to challenge the fees recently charged for the 1997–98 school year. The court accepted this as an oral motion to amend and, for the reasons expressed in this opinion, *infra,* the motion is granted. Plaintiffs may amend the complaint to state allegations related to 1997–98 year service fees.

**6.** Plaintiffs' request to redefine the class to conform to subsequent factual developments *is* addressed at subsection 4, *infra.* Nonetheless, the present discussion regarding whether the original complaint gave defendants notice of these expanded claims still is pertinent to that issue.

challenge the addition of claims for the years 1992–93 and 1993–94, however, arguing that plaintiffs have sat on their rights and that defendants would be prejudiced by the revival of such stale claims outside the statute of limitations period.

Consistent with notions of due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Thus, the court must look to the original complaint as well as other indicia of notice and prejudice to determine whether defendants were on notice of the supplemental and amended claims. *See Robinson*, 918 F.2d at 591.

While it is true that the general policy and procedure for a union charging service fees to non-members within its collective bargaining unit has been held to be constitutional, see *id.; Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232, the original complaint challenges defendants' definition of chargeable categories and application of those categories pursuant to the MEA policy under which certain fees were charged. Specifically, plaintiffs allege:

On information and belief, portions of the ... service fees approved by [the arbitrator] have been or will be used for purposes which are not "germane" to collective-bargaining activity, are not justified by the government's vital policy interest in labor peace and avoiding "free riders," or significantly add to the burdening of free speech that is inherent in the allowance of an "agency shop," including, but not limited to:

a. lobbying and other political activities that do not concern legislative ratification of, or fiscal appropriations for, the dissenting nonmember's collective bargaining agreement;

b. otherwise chargeable activities that do not ultimately enure to the benefit of the employees in the dissenting nonmember's bargaining unit;

c. litigation that does not concern the dissenting nonmember's bargaining unit

and union literature reporting on such activities;

d. public-relations activities; and,

e. organizing and membership activities undertaken to protect or strengthen Defendants' or their affiliates' existing status as exclusive bargaining representatives.

(Original complaint at ¶ 42). Moreover, the complaint alleges that unconstitutional fees were charged in the 1991–92 school year and seeks to enjoin such conduct in future years. The complaint is replete with indications that plaintiffs challenge defendants' application of the service-fee policy not only for 1991–92 but also in subsequent school years. (*See* original complaint at ¶ 1, ¶ 49, Prayer for relief at pp. 17–18). Finally, plaintiffs request "damages in the amount of the portion of the service fees unlawfully exacted" and a permanent injunction against the collection of service fees "for activities which the Court finds were unconstitutionally included in the fees charged for 1991–92." (Original complaint at p. 18).

The court finds that the original complaint provided adequate notice that plaintiffs were challenging not only the conduct undertaken by defendants in 1991–92, but also as defendants might similarly apply their policies into the future. The complaint is specific as to conduct and damages occurring in 1991–92, but that does not preclude supplementation of the complaint to "set forth new facts that have occurred since the filing of the original pleading and that affect the controversy and the relief sought." *Weisbord*, 495 F.Supp. at 1350.

■ The supplementation of conduct from years subsequent to the filing of the complaint serves Rule 15(d)'s purpose of bringing the lawsuit "up to date." *Id.* Unless this proposed supplementation "would result in undue prejudice to the opposing party, has been unduly delayed, has not been offered in good faith, or would be futile," such supplementation should be granted. *Id.* (citing *Foman*, 371 U.S. 178, 83 S.Ct. 227); *Robinson*, 918 F.2d at 591.

First, the court finds that there was neither undue delay nor bad faith in supple-

menting the complaint at this time. Plaintiffs had no prior opportunity to supplement their complaint, since the original complaint was dismissed, appealed, vacated and now remanded for further proceedings, including the threshold question of class certification. Plaintiffs proceeded on the belief that defendants were on notice of the continuing nature of their claims, and, thus, those claims were riding on the appellate resolution of this matter. Plaintiffs now seek to add claims that, raised on their own at this time, would be barred by the statute of limitations. Nonetheless, these claims are asserted as continuing conduct, and whether the proposed supplementation and amendment would unduly prejudice defendants or would be futile is dependent upon whether defendants had proper notice of the claims.

▪ Whether plaintiffs should be allowed to supplement their complaint is dependent upon whether the supplemental claims would relate back to the filing of the original complaint. *See Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 609 n. 3 (4th Cir.), *cert. dismissed*, 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980); *see also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* (1986), § 1508 at 201. Federal Rule of Civil Procedure 15(c) provides:

> (c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading....

Fed.R.Civ.P. 15(c). If that test "is met, a supplemental pleading should ordinarily be given the same relation back effect as an amended pleading." *Davis*, 615 F.2d at 609 n. 3. The theory behind relation back of a supplemental pleading is that "if defendant is given sufficient notice of the nature of the claim being asserted at the outset of the action, the policy underlying the statute of limitations is in no way compromised by allowing a supplemental pleading to relate back." Wright, Miller & Kane, § 1508 at 201–02; *see also Chesapeake & Ohio Ry.*, 878 F.2d at 690–91 (where original pleading

placed defendants on notice that disputed conduct was of continuing nature, "allegations made in the supplemental pleading addressing subsequent instances of the same, continuing conduct do not invoke a statute of limitations defense."). As the court has held above, defendants were on notice of the nature of the claims being asserted, and plaintiffs sought to prevent such conduct not only in 1991–92 but in future years as well.

Defendants argue that because the original complaint did not attempt to collect service fees for years other than 1991–92, the proposed supplemental allegations do not arise out of the same conduct, transaction or occurrence. With this objection, defendants would require the impossible: that plaintiffs would have had to specify damages that did not yet exist at the time they filed their *original complaint*. This is the precise reason for allowing supplemental pleadings. The question is not whether the factual claim is the same but whether the new allegations arose out of the same conduct, transaction or occurrence as "set forth or attempted to be set forth" so as to provide defendants notice of the additional claims. In this case, plaintiffs attempted to set forth the future claims and defendants were on notice of the supplemental claims. While the amounts of the challenged charges may differ from year to year, the categories and types of activities which plaintiffs challenge as an unconstitutional basis for charging service fees are the same or substantially similar. The substance of plaintiffs' claims and questions of liability are the same. Only damages will differ with the expenditures of each school year.

Therefore, plaintiffs may supplement their complaint to add claims for the years 1992–93 through 1997–98, and the claims will relate back to the filing of the original complaint.

## 2. Amendment of class representatives to cure defects

▪ Plaintiffs seek to add additional plaintiffs as class representatives to cure defects identified by defendants through discovery. The only identified defect that is material to plaintiffs' motion to certify this class action is that in the original complaint there are no named plaintiffs to represent six of the seven local unions named as defendants.

With regard to this issue, plaintiffs do not seek to supplement the complaint but rather to amend it to add plaintiffs to serve as class representatives with standing as to claims against five of the eight local union defendants named in the amended and supplemental complaint.

Defendants oppose plaintiffs' motion to add plaintiffs as class representatives and to add them as individuals for time periods preceding the 1994–95 school year.[7] Defendants argue that intervention in a class action to assure that a class is adequately represented is only proper after the class has been certified and the named representatives have become deficient in their status so that the adequateness of class representation is brought into question. For this proposition, defendants cite two Supreme Court cases, neither of which supports this proposed point of law. *See United Airlines v. McDonald,* 432 U.S. 385, 402, 97 S.Ct. 2464, 2474, 53 L.Ed.2d 423 (1977) (a dissenting opinion) and *Rogers v. Paul,* 382 U.S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265 (1965)(holding that plaintiff may intervene to represent class in stead of representatives for whom action has become moot). While *McDonald* and *Rogers* hold that intervention is proper after certification to cure a recently arisen deficiency in class representation, neither case indicates that intervention can occur *only* after certification. Thus, neither case is instructive for neither addresses the issue currently before the court.

Defendants further argue that the proposed plaintiffs cannot intervene because "[a] motion for intervention under Rule 24 is not an appropriate device to cure a situation in which Plaintiffs may have stated causes of action that they have no standing to litigate." *McClune v. Shamah,* 593 F.2d 482, 486 (3d Cir.1979). While *McClune* does so hold, that case was not a class action and is distinguishable from the present matter.

In *McClune,* a number of limited partners filed suit under the federal securities laws. In response to the defendants' motion to dismiss various claims for lack of standing, the Cedar Bayou Limited Partnership sought to intervene to assert the challenged claims. The district court denied intervention, and the Third Circuit Court of Appeals affirmed, holing that intervention is not a proper device to cure a defect in the standing of the existing plaintiffs. 593 F.2d at 486. The court ruled that "it is axiomatic that 'intervention will not be permitted to breathe life into a nonexistent lawsuit.' " *Id.* (quoting *Fuller v. Volk,* 351 F.2d 323, 328 (3d Cir. 1965) (quotation omitted)). The theory behind this holding was that where the original plaintiff to an action lacks standing, there can be no action, and intervention cannot be made into a non-existent lawsuit. *See Rose v. Arkansas Valley Environmental & Utility Authority,* 562 F.Supp. 1180, 1193 (W.D.Mo. 1983).

*McClune* is inapposite to the present case for two reasons. First, in the present class action lawsuit there has been no ruling on class certification and there is no pending motion to dismiss for lack of standing. Plaintiffs seek to amend the pleadings prior to consideration of class certification, and, thus, the claims against the local union defendants are presently pending and there exists a lawsuit into which the intervenors might join. Second, because there never has been a ruling on the merits of plaintiffs' class certification, the statute of limitations continues to be tolled regarding claims contained within the original complaint and regarding which defendants have been on notice throughout this lawsuit. *See American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 553–54, 94 S.Ct. 756, 766–67, 38 L.Ed.2d 713 (1974). *McClune* does not hold that plaintiffs cannot intervene prior to certification as party representatives in a class action to cure a deficiency.

▉ In the present matter, Judge Churchill did not deny class certification on its merits but rather found the issue moot. *Bromley,* 843 F.Supp. at 1157. The court of appeals reversed summary judgment, vacated the district court's judgment, and remanded for further proceedings including re-

---

7. Defendants would allow claims by individual plaintiffs suing on their own behalf for conduct occurring after 1993–94 because such claims would be within the statute of limitations period.

visiting the question of class certification. *Bromley*, 82 F.3d at 696.

When an appellate court overturns a district court's denial of class certification, the date of original filing, rather than the date of eventual certification, is used to determine whether the claims of class members are time-barred. Were this rule not to apply, appeals of certification would be meaningless.

*Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 390, (5th Cir.), *cert. denied*, 493 U.S. 821, 110 S.Ct. 79, 107 L.Ed.2d 45 (1989). Thus, the court holds that in considering whether plaintiffs' class action should be certified, the court will treat the claims as filed at the time of the original complaint.

The next question is whether parties may intervene as class representatives. It is axiomatic that, if the statute of limitations has run on the intervenors' claims, then they could not intervene, as individuals or as class members.

■ It is undisputed that the statute of limitations on an unnamed class member's claims is tolled from the time of filing of the original complaint until such time as the motion for class certification is denied. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 766–67, 38 L.Ed.2d 713 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983). Defendants argue, however, that the same is not true for class claims and thus, plaintiffs cannot intervene to act as class representatives more than three years after their claims arose.

In support of this position, defendants rely on *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), in which the court addressed the issue of tolling of the statute of limitation in the class action context. The *Andrews* court held that although an unnamed class member's individual claim is tolled from the time of filing of the complaint until the motion for class certification is denied, *see American Pipe*, 414 U.S. at 554, 94 S.Ct. at 766–67; *Crown, Cork & Seal*, 462 U.S. at 354, 103 S.Ct. at 2397–98, such tolling does not apply to a class claim. *Andrews*, 851 F.2d at 149. Contrary to the present situation, the plaintiffs in *Andrews* attempted to intervene to save the class action *after* class certification had been addressed and denied by the court. Adopting the reasoning of various other courts of appeals, the Sixth Circuit expressed its concern that if class claims were tolled until after denial of a motion for certification, then the courts would face a continuous parade of plaintiffs intervening after denial to serve as class representatives, reasserting the same class claims as those previously denied. *See id.* Because the intervenors in the present matter do so prior to a ruling on the merits of class certification, the concerns expressed by the court of appeals in *Andrews* are not implicated by the facts of this case.

In the present action, the merits of class certification never were considered by the district court; the court of appeals vacated the district court opinion and remanded to consider, *inter alia*, the issue of class certification. Because the issue was never addressed, this is not a case where the plaintiffs are attempting to reassert a class where certification has previously been denied but, rather, the plaintiffs are attempting to amend their pleadings prior to a ruling on class certification. Thus, *Andrews* is unhelpful.

The present situation is very similar to that addressed by the district court in *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y.1992), which the court finds persuasive. In *Trief*, the plaintiffs filed a class action alleging violation of the federal securities laws. The plaintiffs moved for class certification and the defendant opposed in part, on grounds that none of the named plaintiffs purchased securities after March 2, 1989. Therefore, the defendant argued, the class representatives did not have standing to assert a claim regarding purchases made after that date. Thereafter, a Mr. Feldman filed a motion to intervene pursuant to Rule 24(b)(2) to represent purchasers of stock subsequent to March 2, 1989. As in this case, the defendant argued that Feldman could not intervene either individually or as a class representative because his claim was barred by the applicable statute of limitations. Applying the controlling Supreme Court precedent, the district court held that the filing of

the class action tolled the statute of limitations on Feldman's claims, Mr. Feldman was allowed to intervene as a class representative, and the class was certified pursuant to Rule 23.

In its reasoning, the court reviewed the very issues pertinent to the present plaintiffs' motion to add intervening plaintiffs. The court stated:

> Rule 24(b)(2) authorizes permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2). Intervention of class representatives to ensure adequate class representation is highly desirable. *See Manual for Complex Litigation,* Second, § 30.15, at 216....

> \* \* \*

> ... Defendants also rely on *Korwek v. Hunt,* 827 F.2d 874 (2d Cir.1987), to oppose the Feldman Motion.[8] Defendants argue that, under *Korwek,* the filing of a class action tolls the statute of limitations for individual but not for class claims.... Thus, defendants conclude that Mr. Feldman should not be permitted to intervene on behalf of the class.

> Commencement of a class action complaint or motion to certify a class tolls the running of the statute of limitations against all members of the putative class. The Supreme Court has held that "the rule most consistent with federal class action procedure must be that commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class...." *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 766–67, 38 L.Ed.2d 713 (1974).

> Later intervention by a member of the class is not barred if the original class action was timely filed. As the Supreme Court has held, "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or intervene as plaintiffs in the

pending action." *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983). This rule is predicated on the proposition that an intervenor that reasonably expected to be represented in the originally filed action possesses an inchoate interest in the class action running from the original date of filing. *See* 3B [*Moore's Federal Practice,*] at 23–523.

> *Korwek* does not alter this result. The *Korwek* holding is explicitly limited to the narrow question of whether the *American Pipe* tolling rule applies to "permit the filing by putative class members of a subsequent class action nearly identical in scope to the original class action which was denied certification." *Korwek,* 827 F.2d at 876. The *Korwek* court held that the *American Pipe* rule did not apply in that context because to allow tolling would provide counsel an opportunity to "'piggyback one class action onto another and thus toll the statute of limitations indefinitely.'" 827 F.2d at 878 (citations omitted)....

144 F.R.D. at 202–03.

Just as the *Trief* court concluded, intervention should be allowed in this case:

> [The intervening plaintiffs] could reasonably have believed that [they] were included in the putative class. [Their] intervention—in essence prompted by defendants' concern with adequacy of representation—merely makes [their] inclusion explicit. Indeed, important policy considerations support ... inclusion because [the intervenors'] presence will ensure that all interested plaintiffs are represented. As such, [these] are the type of plaintiff[s] that the *American Pipe* tolling rule is designed to protect....

*Id.* at 203. In the present case, the intervening plaintiffs were putative class members as alleged in the complaint and the statute of limitations was tolled from the moment of filing of the complaint. Remanded from the court of appeals, the motion for certification has not been adjudicated on its merits, and, therefore, this action must be considered from the point that it was filed. The court

---

8. In the present action, defendants also rely on *Korwek.*

finds that the intervening plaintiffs may intervene and may be considered as class representatives for purposes of the motion for certification.

### 3. Addition of defendant Saginaw Education Association

In their response brief, defendants did not object to the addition of the Saginaw Education Association ("SEA") as a defendant to any individual claims for the 1996–97 school year. In a supplemental response brief, however, defendants changed course, arguing that the SEA should not be added as a defendant because none of the named plaintiffs, original or intervening, have standing to sue the SEA. At oral argument, plaintiffs conceded that the SEA did not represent any of the named plaintiffs in collective bargaining; however, plaintiffs argued that they do have standing to sue the union locals for which there is no representative member, which would include the SEA.

Plaintiffs' claims against the SEA allege action taken within the statute of limitations period. Thus, the only reason to bar the amendment would be defendants' challenge to plaintiffs' standing over the SEA. Whether plaintiffs can maintain their class action against local union defendants to which there is no named plaintiff to serve as class representative is discussed, *infra*, at section II.B. of this opinion, which addresses plaintiff's motion for class certification. Because the question is answered in the affirmative, defendants' standing argument fails and plaintiffs may, therefore, amend their complaint to assert claims against the Saginaw Education Association.

### 4. Amendment of class definition

■ In the original complaint, at paragraph 25, plaintiffs defined the class as consisting of:

(a) all nonunion employees who in the 1991–1992 school year were required to pay a service fee to the MEA, NEA, and any of their local affiliates under a compulsory unionism agreement ... **and who challenged the Association-determined fee pursuant to the challenge procedures established by the MEA;** and (b) all Michigan nonunion public employees who

in future school years while this action is pending are required to pay a service fee to the MEA, NEA, and any of their local affiliates **and who challenge the Association-determined fee pursuant to the challenge procedures established by the MEA.**

(Original complaint at ¶ 25) (emphasis added). Citing this paragraph, defendants contend that the original complaint limited class membership to those individuals challenging the fees charged pursuant to the MEA challenge procedures. Defendants oppose plaintiffs' attempt to broaden the class to include nonunion employees who, in subsequent years, did not avail themselves of the MEA challenge procedures but rather notified defendants that they objected to the fees as charged and reserved their right to challenge in other legal fora. Defendants argue that the original complaint was not reasonably calculated to apprise them that they were being sued by the expanded number of members in this redefined class.

Perhaps contrary to the class definition set forth in the complaint, in their prayer for relief, plaintiffs sought certification of a class action on behalf of all non-union members "who have challenged or will challenge the amount of the fee for 1991–1992 and/or subsequent school years." (Original complaint at p. 17). This request for certification did not specify that the non-union members were required to challenge the service fees through the arbitration procedure but rather only that they would challenge the fees in a general sense. This fact alone raises a question regarding the scope of the class definition, requiring a ruling on class certification. Moreover, during the pendency of this lawsuit, defendants have been on notice that many of the non-member employees objected to the fees with reservation of their rights to challenge in some forum other than the union arbitration proceedings. In fact, many of the originally-named plaintiffs to this lawsuit objected in years subsequent to 1991–92 in this way to avoid the impact of Judge Churchill's ruling that they could only challenge the service fees in review of the arbitration rec-

ord. *See Bromley*, 843 F.Supp. at 1151.[9]

Irrespective of plaintiffs' method of objecting to and challenging the service fees charged them, the posture of this action is essentially back to square one. Plaintiffs have filed a lawsuit in which they seek to represent non-union employees who object to certain union practices of charging for fees that they claim are not chargeable and to which they object. Plaintiffs simply seek to amend their complaint so that the class for which they seek certification (which certification was never ruled upon previously) will be representative of their continuing claims, which are substantially the same for the entire period of the litigation. Plaintiffs are not challenging the arbitration process, they are challenging the assessment of service fees imposed through categories of chargeable activities but which activities allegedly were not constitutionally chargeable. Liability will be determined based upon the activities charged for. The method of calculation and allocation of fees between those chargeable and non-chargeable, and the deference to be given to the arbitration process, remains to be determined. Because defendants were on notice from the original pleadings, and from the subsequent notices from their non-union employees, that they would challenge the agency fees in some legal forum, the amendment will be allowed.

■ To the extent that defendants argue that the arbitration process—as required by *Hudson* to allow non-union employees to challenge collective bargaining service fees—creates an exhaustion requirement prior to filing suit, that argument has been rejected by the Sixth Circuit in this case, *Bromley*, 82 F.3d at 694, as well as by the Third and D.C. Circuits, *Miller v. Air Line Pilots Ass'n*, 108 F.3d 1415, 1421 (D.C.Cir.1997); *Hohe v. Casey*, 956 F.2d 399, 409 (3d Cir.1992). Under existing circuit law, there is no administrative exhaustion requirement to file a federal action under 42 U.S.C. § 1983. *Bromley*, 82 F.3d at 694–95 (citing *Tierney v. City of Toledo*, 917 F.2d 927, 939–40 (6th Cir.1990)). Therefore, whether plaintiffs proceeded

through arbitration or merely objected to the service fees prior to filing suit, the method of objection and notice does not create a material distinction between the claims originally filed and those which plaintiffs seek to add through their supplemental and amended complaint.

Therefore, plaintiffs' motion to supplement and amend the complaint is granted in its entirety.

**B. Motion for Class Certification**

■ The requirements for bringing a class action lawsuit are provided by Fed. R.Civ.P. 23, which states that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In determining whether the class representatives will fairly and adequately protect the interest of the class, the court should consider two criteria: (1) whether the representatives have interests common with the unnamed members of the class; and (2) whether the representatives will vigorously prosecute the interests of the class through qualified counsel. *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir.1996). In addition to satisfying the prerequisites of Rule 23(a), a party seeking class certification must also meet two implicit requirements not stated in the rule: "that a precisely defined class exists, and that the class representatives are members of the proposed class." *Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1012 (W.D.Mich.1987) (citation omitted). Plaintiffs assert that they meet all the Rule 23(a) prerequisites to class certification. Defendants' oppose certification primarily on the grounds that the named plaintiffs and their

---

9. The theory was that if plaintiffs did not go through the union-provided arbitration procedure they would have more latitude to obtain discovery in a federal court action challenging the service fees than if they were objecting to the fees approved by the arbitrator.

counsel are inadequate to represent the plaintiff class.

### 1. Numerosity

The putative class numbers at least 60 in the initial year, that number of plaintiffs having returned questionnaires to plaintiffs' counsel indicating that they "would like to see a lawsuit filed in federal court challenging the amount of the [MEA's] reduced service fee for 1991–92." (Plaintiffs' reply brief in support of motion for certification at 14). Potentially, there are 236 class members for 1991–92, the number of non-union employees having challenged the service fees through arbitration. The continuing nature of the claims makes the numbers similar for all subsequent years. The court finds this number sufficient to support a class action, especially where the other prerequisites of Rule 23(a) are met.

### 2. Common questions of law and fact

The court finds that there are questions of law and fact in common to all members of the class and the claims of the named plaintiffs are typical of the putative class. Every non-union public employee of the Michigan school system has a right to be charged service fees only for those activities necessary for the MEA to represent them in collective bargaining. *See Lehnert*, 500 U.S. at 519, 111 S.Ct. at 1959. They all are in the same position *vis-a-vis* the MEA and NEA, and only questions of damages, calculated as amounts of unconstitutionally-charged fees, will differ from year to year, and within each year will vary only for those plaintiffs who are members of a local union defendant. These differences, however, relate only to damages, not to liability, and can be calculated separately for each year and related to each local union defendant.

### 3. Typicality of claims

There is no question that the named plaintiffs have interests common to all members of the putative class. And while defendants argue that the plaintiffs admitted at deposition that they wished decertification of the

union, that outcome is not within the relief available to them through the present lawsuit. The claims of the named plaintiffs are typical to all putative class members.

### 4. Representatives will adequately protect interests of class

Defendants vociferously oppose certification of the named plaintiffs to act as class representatives and their counsel to fairly protect the class interests. Defendants' concerns over the motivation of plaintiffs' counsel or the National Right to Work Foundation,[10] while perhaps understandable, are irrelevant to counsel's prosecution of this case. As long as the Foundation has no affect on the litigation of this matter, its doctrine and goals do not disqualify it from funding plaintiffs' assertion and protection of their First Amendment rights. Likewise, plaintiffs' counsel are bound by the same rules of procedure and conduct as are all counsel in federal court actions. Counsels' personal beliefs are irrelevant so long as they do not result in conduct violative of the applicable court rules. Should any party discover or suffer from any improper conduct, there are appropriate means for challenging and, if necessary, sanctioning such activity. Defendants have not presented evidence of misconduct in counsels' representation of plaintiffs in this litigation that would disqualify them from providing legal services to the named plaintiffs nor to any member of the putative class.

### 5. Standing

 There is one issue related to certification that merits some additional discussion. Whether a claim is brought by an individual in his own name or on behalf of a class, the plaintiff must have standing to bring the claims against all defendants. *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 462 (9th Cir.1973). It is an established principle that in a class action "each member of a plaintiff class must have a cause of action against each defendant." *Thompson v. Board of Educ. of Romeo Community Schools*, 709 F.2d 1200, 1204 (6th Cir.1983)

---

**10.** Plaintiffs' counsel include two staff attorneys of the National Right to Work Legal Defense

Foundation, Inc.

(citing *LaMar*, 489 F.2d at 466). There are, however, two recognized exceptions to this requirement:

> (1) Situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury; and

> (2) Instances in which all defendants are *juridically related* in a manner that suggests a single resolution of the dispute would be expeditious.

*Thompson*, 709 F.2d at 1204–05 (6th Cir. 1983).

Defendants challenge plaintiffs' ability to sue local union defendants against which they lack standing because there is no named plaintiff to represent the class against those defendants. Plaintiffs argue in response that because all union locals apply the same MEA procedures for calculating and charging service fees, they meet the first criterion, and because they are all part of a single organization, they meet the second. The court finds that plaintiffs meet both exceptions.

The challenged conduct allegedly taken by the NEA, MEA, and the named local union defendants all was taken pursuant to the same service fee policy and, more to the point, by application of the same categorical definitions of chargeable activities. While there was no "conspiracy" to violate plaintiffs' constitutional rights, there was a concerted scheme to act which allegedly resulted in the violation of plaintiffs' rights at all three levels of union affiliation. Moreover, the union affiliation presents an organizational structure which suggests the expediency of proceeding against, and resolving the issues as they relate identically to, all named defendants. Therefore, the court finds that the named plaintiffs can adequately represent the plaintiff class against all named defendants.

#### 6. Rule 23(a) requirements

Finally, plaintiffs also must establish that the class can be maintained under one of the subdivisions of Rule 23(b). A class action may be maintained where the prerequisites of Rule 23(a) are met and where: (1) "the prosecution of separate actions ... would create a risk of (A) inconsistent or varying"

results; (2) "the party opposing the class has acted ... on grounds generally applicable to the class, thereby making appropriate final injunctive ... or ... declaratory relief with respect to the class as a whole;" or (3) "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy...." Fed.R.Civ.P. 23(b).

Plaintiffs satisfy all three subdivisions of Rule 23(b). Therefore, the class is certified and the action may be maintained as sought in the supplemental and amended complaint.

### III. Conclusion

The original complaint stated a continuing violation and, because defendants were on notice of future claims, those claims may be added with relation back to the filing of the original complaint. Prior to a substantive decision on the certification issue, plaintiffs who are members of the putative class may be added to serve as class representatives. Plaintiffs may add as a defendant the Saginaw Education Association. The class is certified and plaintiffs may amend the complaint to clarify the class definition to include those plaintiffs who did not proceed through the available *Hudson* arbitration process but did notify defendants that they objected to defendants' calculation of service fees.

Accordingly, for the reasons stated herein, plaintiffs' motion to supplement and amend the complaint and plaintiffs' motion for class certification are GRANTED. Within twenty days after entry of this order, the parties shall propose a method of providing notice to all potential plaintiffs of the pending lawsuit and of their right to opt in or out of this class action, as provided by Fed.R.Civ.P. 23(c)(2).